IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| MITCHELL WAGNER, TDCJ ID # 01543049, Plaintiff, | ) ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. 1:15-CV-177-BL |
| TEXAS DEPARTMENT OF CRIMINAL JUSTICE, *et al.*, | ) ) ) ) | |
| Defendants. | ) | Assigned to U.S. Magistrate Judge |

## SECOND OPINION and ORDER OF PARTIAL DISMISSAL UNDER 28 U.S.C. §§ 1915A(B) and UNDER 28 U.S.C. §§ 1915(e)(2)(B)[1]

This case remains before the Court for review of *pro-se* plaintiff Mitchell W. Wagner's case under the screening provisions of 28 U.S.C. §§ 1915A and 1915(e)(2)(B). The Court previously issued an Opinion and Order of Partial Dismissal and Rule 54(b) Judgment dismissing come claims and several defendants. (Docs. 26, 27.) After conducting a *Spears* hearing, the Court now finds that several additional defendants and claims must also be dismissed for failure to state a claim upon which relief may be granted, and Wagner will be authorized to obtain service of process of the remaining claims on some defendants, as permitted by a separate Order.

### I. BACKGROUND

Mitchell W. Wagner, an inmate at the Texas Department of Criminal Justice's French Robertson Unit, filed a civil-rights complaint seeking relief under 42 U.S.C. § 1983.[2] Wagner named twenty-one defendants, consisting of three organizations and numerous individual defendants. Compl., at 3-5 (doc. 1.) After initial review of the complaint, the Court directed Wagner to file a more

---

[1] Plaintiff Mitchell Wagner filed a consent to proceed before the United States Magistrate Judge, such that this magistrate judge can address all matters in this case under 28 U.S.C. § 636(c). (Doc. 23.)

[2] "Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C.A. § 1983 (West 2012).

definite statement of his claims with responsive answers to the Court's questions, and Wagner filed a more definite statement (MDS). (Doc. 22).

The focus of the complaint and more definite statement is Wagner's claim that he has been denied the right to practice his version of Christian music ministry at the Robertson Unit, in violation of his rights under the First Amendment, in violation of the Religious Land Use and Institutionalized Person's Act (RLUIPA), in violation of the Texas Religious Freedom Restoration Act (TRFRA), and in violation of the "Inmate Welfare Section of the Texas Government Code. Compl., at 7 (doc. 1). He also alleges that he has been the victim of racial discrimination in violation of the Fourteenth Amendment's equal protection clause. *Id.* at 12. He also seeks relief under the Rehabilitation Act of 1973. *Id.* at 6.

Plaintiff previously filed a lawsuit in this division arising from very similar facts against three individual defendants, reciting allegations that he was denied access to play a piano and sing, even though other religious groups were not excluded from use of the instruments. *Wagner v. Campuzano, et al.*, No. 1:12-CV-205-C. In that case, after this Court initially dismissed his claims under the First Amendment and RLUIPA as frivolous, the United States Court of Appeals for the Fifth Circuit vacated and remanded that holding, writing that Wagner had stated claims under the First Amendment and under RLUIPA. *See Wagner v. Campuzano,* No.13-11024 (5th Cir. April 15, 2014). On remand, this Court dismissed those claims on other grounds, namely that they were barred by the applicable statute of limitations. *Wagner v. Campuzano,* No.1:12-CV-205-C (Order and Judgment entered March 3, 2015).

In this latest suit, Plaintiff's claims arise from the time after January 3, 2014, when Plaintiff alleges he was initially granted the authorization to "use the piano to minister with on Sunday mornings during 4-Building congregational Christian services." Compl., at 8 (doc. 1). In the balance of his complaint, Wagner then alleges in detailed single-spaced type, multiple claims of how different

TDCJ officials interfered with that initial authorization for him to "minister with piano music" in numerous different ways over the course of 2014 and 2015. Compl., at 8-11 (doc. 1).

## II. PRELIMINARY SCREENING

Plaintiff is an inmate who has been permitted to proceed *in forma pauperis*. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam). Because he is proceeding *in forma pauperis*, his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A claim that falls under the rule announced in *Heck v. Humphrey*, 512 U.S. 477 (1994), "is legally frivolous unless the conviction or sentence at issue has been reversed, expunged, invalidated, or otherwise called into question." *Hamilton v. Lyons*, 74 F.3d 99, 102 (5th Cir. 1996). A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To avoid dismissal for failure to state a claim, plaintiffs must allege facts sufficient to "raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mere "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" suffice to state a claim upon which relief may be granted. *Id.*

As noted, after dismissing some claims and defendants, the Court scheduled an evidentiary

hearing pursuant to *Spears v. McCotter*, 766 F.2d 179, 181–82 (5th Cir. 1985), and 28 U.S.C. § 1915. After now conducting further review of the complaint and more definite statement, and considering the testimony provided by plaintiff Mitchell Wagner at the *Spears* hearing, the Court finds and determines that several other claims and defendants must be dismissed under authority of 28 U.S.C. §§ 1915A and 1915(e)(2)(B).

### III. ANALYSIS

**A.     Failure to State a Claim Upon Which Relief May be Granted**

(I.) No *Respondeat Superior*--No Claim Arising from the Resolution of Grievances
(Defendants Guerrero, Nelson, Hunter, Fox, and Gonzales)

The events in this suit begin after January 3, 2014, when Wagner recites that he was authorized by Bill Pierce, a Deputy Director of Chaplaincy Programs, and former Warden Edward Wheeler, to play the piano at regular Sunday morning chapel services held for the 4-building A-side of the prison every other Sunday morning. Compl. at 8, (doc. 1); MDS at 1-2 (doc. 22). Wagner writes what this meant to him:

> January 3, 2014, is the date that Plaintiff was authorized to play the piano inside the chapel on Sunday mornings for the purpose of ministering with music, to the saints and sinners alike, <u>in order to pay Plaintiff's tithes</u> to Holy god, by using the spiritual gift Plaintiff has been given from the Holy Spirit, <u>to call sinners to repentance and back slidden [sic] back to</u> Christ, and <u>to evangelize and make new converts to Christianity,</u> and to <u>make an offering to God, with the praise and worship from music and song.</u> Because Plaintiff is an African-American and his style of worship suits African-American Christians, including clapping hands, and shouting loudly, and dancing in the aisles of the chapel, white stiff Church of Christ, and other Protestant denominations find Black folks style offensive. By the oppressive misconduct taken against Plaintiff after Warden Wheeler granted him permission to play the piano every other Sunday in the chapel, and by the actions taken to keep Plaintiff off the piano 'after' Deputy Director Pierce authorized Plaintiff to play the piano, and notified Defendant Baldwin of the decision, Plaintiff was prevented from creating the joy and fellowship he would have received and given to other African-American Christians, and to all races of Christians, and prevented from evangelizing with his gift, and prevented from making an offering of praise and worship with music to the Lord, and

> prevented from using music to call sinners to repentance, and saints back into the church for Jesus [sic].

MDS, at 3, (doc. 22). Plaintiff alleges that soon after he obtained this authorization to play piano every other Sunday, defendant Chaplains Archie Scarborough, Stanley J. Baldwin, and Keith F. Meeks

> created a new inmate label called voluntary inmate musicians, and created a new rotation during the Sunday morning congregational worship services specifically targeting Plaintiff for discriminatory and disparity applications of the new rotation to substantially burden Plaintiff's music ministry, that never existed until January 3, 2014, when Plaintiff won a favorable decision from Bill Pierce and Edward Wheeler.

Compl. at 9, (doc. 1). In the balance of his pleadings, Plaintiff goes on to recite detailed allegations of the actions of the Robertson Unit chaplains, three volunteer chaplains, Richard Burgess, James Finley, and Clayton Wheeden, and the Texas Kairos Organization.

Plaintiff, however, has also named several other officials from outside the Robertson Unit, and the warden and an assistant warden at the Robertson Unit. Plaintiff recites that the Robertson Unit is located within TDCJ Region VI, and he therefore sent written notices to several regional office officials, including Eric Guerrero, Region VI Director, Wallace Nelson, Region VI Chaplain III, and Timothy Hunter, Region VI Chaplain III. Compl. at 4, (doc. 1). Plaintiff contends that Guerrero, Hunter, and Nelson were repeatedly notified in writing, and Defendant Hunter was notified in person, of what Wagner alleges was his being subjected to racial and religious discrimination on an ongoing basis. Compl. at 8, (doc. 1). Wagner goes on to claim that none of these persons intervened to take the remedial action necessary to discharge their duty. Compl. at 11, (doc. 1). With regard to defendant Guerrero, Wagner clarified that his interaction with Guerrero was in Guerrero's role in responding to his Step 2 grievance on behalf of the regional office. MDS at 16 (doc. 22). Wagner contends that once Guerrero received the grievance, he was obligated to stop the alleged racial and religious

discrimination, and administrative disparity. *Id.* With regard to Wallace Nelson, Wagner writes that he wrote him in both late January 2014, and again in early February 2014, and that they exchanged "multiple letters." MDS, at 17 (doc. 22). Wagner alleges that Nelson did reach out to Robertson Unit Chaplain Baldwin, but no remedial action was taken. *Id.* With regard to Timothy Hunter, Plaintiff also recites that he wrote Hunter a letter in February 2015, and that in response Hunter came to the Robertson unit to meet with him. *Id.* Wagner alleges that in spite of Hunter's assurances, he took no remedial action. *Id.*

As noted above, Wagner also included as defendants Ronald C. Fox, Senior Warden, and Adam W. Gonzales, Assistant Warden. Compl. at 4 (doc. 1). Wagner also alleges that these defendants failed to intervene. *Id.* But the specifics of those allegations arise from Fox and Gonzales's roles in responding to Wagner's grievances and notices. In this regard Wagner recites that Fox and Gonzales repeatedly failed to take action on several instances in response to his submission of I-60 Inmate Request Forms. Compl. at 10-11 (doc. 1). When asked to state any additional facts in support of his allegations against these defendants, Wagner provided the following answer:

> Once Ronald C. Fox was assigned as senior warden at the French M. Robertson Unit, he had to approve anything that had to do with management and supervision of the prison population, and the enforcement of the laws, statutes, and department and division policies and procedures "related to" the daily operation of each facility. Chaplain Keith F. Meeks often referred to his visits to Ronald Fox and Adam Gonzales, during the tie congregational worship services, and at individual one on one meetings.
>
> Plaintiff submitted numerous formal written notices and complaints directly to Ronald Fox and Adam Gonzales, as part of his compliance with TDCJ's requirement that inmates attempt informal resolution before filing Step 1 grievances complaining about employees, and providing notice that substantial burdens have been placed on inmates religious exercise under the TRFRA, § 110.001, Civil Practices & Remedies Code. Upon receiving the formal and informal complaints and notices in writing, neither Ronald Fox or Adam Gonzales, discharged their legal duties under Title 4, § 493.006(a)-(b), delegated by Brad Livingston, or any other policy or law protecting

> Plaintiff from the racial and religious discrimination but instead entered agreement by omission and failure to act, practicing supervisory ostracism or joining the conspiracy launched by Archie Scarborough, Keith Meeks, and Stanley Joe Baldwin, to undermine and circumvent the authorization Plaintiff had received January 3, 2014,

MDS, at 19-20 (doc. 22). Thus, in these pleadings, Plaintiff challenges each of these defendants in their supervisory roles, and for their way they each responded to his administrative grievances or written letters/notices.

(a). No *Respondeat Superior*

In order for a prison official to be found liable under § 1983, the official must have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *See Lozano v. Smith,* 718 F.2d, 756, 768 (5th Cir. 1983). As noted, Plaintiff's allegations against Fox arise in part from Fox's appointment as Senior Warden, and Wagner's claim that Fox "had to approve anything that had to do with management and supervision of the prison population." MDS, at 19 (doc. 22). Similarly, he alleges Assistant Warden Gonzales is somehow responsible for actions taken with regard to the worship services, because he visited with Meeks. *Id.* During the *Spears* hearing, the Court recounted Wagner's allegations that Guerrero, Nelson, Hunter, Fox, and Gonzales were notified and failed to respond and failed to prevent further violations. *Spears* Hearing at 23:30. When the Court then asked Wagner for any specific actions that he might wish to recite against any of these defendants, however, Wagner responded only: "They did not discharge their duty and stop their subordinates from discrimination against me Your Honor or allowing the convict supervisors and the convict enforcers to run the church services who are all Kairos members and they let them discriminate against me and my ministry." *Spears* Hearing at 24:00. When the Court, later in the hearing, again asked Wagner to provide any specifics as to actions taken against him by Guerrero, Nelson, Hunter, Drum, Pierce, Fox

and Gonzales, Wagner again testified that these individuals "did not discharge a duty to stop the retaliation and discrimination." *Spears* Hearing at 1:00:20 - 1:01:10.

Plaintiff's allegations that the named defendants are responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983. *See Ashcroft*, 556 U.S. at 676 (2009) (citing *Monell v. New York Dep. of Social Servs.*, 436 U.S. 658, 691 (1978)); *see also Bell v. Livingston*, 356 F. App'x 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability"). Further, in absence of direct participation by a supervisory official, an inmate plaintiff must allege that the deprivation of constitutional rights occurred as a result of the subordinate's implementation of a supervisor's wrongful policy or as a result of a breach by the supervisor of a duty specifically imposed by law. *Lozano v. Smith*, 718 F.2d at 768 (citations omitted).

Plaintiff has not asserted any direct conduct by the TDCJ Region VI officials and wardens Fox and Gonzales, and he does not allege that any subordinate took action in furtherance of an illegal or wrongful policy. Rather, Wagner repeatedly makes the conclusory assertion that the defendants conduct amounted to a general breach of duty to comply with the law. But those allegations are not allegations of a breach of a specific duty mandated by law for each defendant. Rather, with regard to these defendants, Wagner alleges only that they were aware of the purported unconstitutional actions taken against him and took no action to intervene. These allegations are insufficient to state a claim that these defendants violated Wagner's constitutional rights.

(b). No Claim Arising from the Failure to Respond to Grievances/Letters

Furthermore, to the extent that Wagner complains that these defendants should be found responsible for their failure to intervene when they learned of his complaints through his administrative grievances or through his letters, "the law is clear that the plaintiff is not

constitutionally entitled to an investigation of his complaints or administrative grievances or to a favorable response thereto." *Hayward v. Douglas, et al.*, No.07-072-FJP-DLD, 2011 WL 13182993, at *5 (M.D. La. March 1, 2011). Congress requires inmates to exhaust their "administrative remedies as are available . . ." 42 U.S.C. § 1997e(a) (West 2012). A prison system is not, however, required to establish grievance procedures, and inmates do not have a basis for a lawsuit because a prison system has not established grievance procedures or fails to adhere to it. 42 U.S.C. § 1997e(b) (West Supp. 2017). Thus, allegations of a delay or denial in the processing of a grievance do not state a claims of a constitutional violation. As the United States Court of Appeals for the Fifth Circuit found in *Geiger v. Jowers:*

> Insofar as [the inmate plaintiff] seeks relief regrading an alleged violation of his due process rights resulting from the prison grievance process, the district court did not err in dismissing his claims as frivolous . . . [an inmate] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any alleged due-process violation arising from the alleged failure to investigate his grievances is indisputably meritless."

*Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir.2005); *see also Jenkins v. Henslee*, No. 3-01-CV-1996-R, 2002 WL 432948, at *2 (N.D. Tex. March 15, 2002)("An inmate does not have a constitutional entitlement to a grievance procedure. Hence any alleged violation of the grievance procedure does not amount to a constitutional violation") (citing *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) and *Antonelli v. Sheahan*, 81 F.3d 1422 (7th Cir.1996)). Another district court thus explained "Congress established the exhaustion requirement to give prison and jails the first opportunity to address complaints by inmates, but inmates do not have a basis for a lawsuit because they are dissatisfied with the grievance procedure." *Stafford v. McKay*, CA No. 5:10-CV-35, 2010 WL 4274758, at *9 (E.D. Tex. Sep. 27, 2010), *rep. and rec. adopted,* 2010 WL 4286162 (Oct. 28, 2010). Accordingly, Wagner's claims regarding the alleged failure of defendants Guerrero, Nelson, Hunter, Fox, and Gonzales to properly investigate and/or respond to his administrative grievances

and written complaints is without legal foundation and must be dismissed.

(II.) No Liability for Failure to Train (Defendants Vance Drum and Bill Pierce)

Plaintiff named as defendants Vance Drum and Bill Pierce, each identified as a Deputy Director of TDCJ Chaplaincy. Compl. at 4 (doc 1.) As to each of these persons, Plaintiff wrote that he "failed to train Region VI Chaplains, and Robertson Unit Chaplains to comply with United States and Texas laws protecting religious rights, and failed to discharge delegated duty to stop racial and religious disparity and religious discrimination." *Id.* In the Order for More Definite Statement the Court directed Wagner to provide any facts supporting a "failure to train" allegation against either Drum or Pierce. In response, Wagner complained of several instances where Drum was involved in answering Wagner's Step 2 grievances, and one instance when Bill Pierce answered a Step 2 grievance, but he wholly failed to provide any facts of any training program or lack of training program implemented by Drum or Pierce. MDS at 19-20 (doc. 22). When the Court questioned Wagner during the Spears hearing about his allegations that Drum and Pierce failed to train, Wagner again provided no facts to relate to such claim, saying only that "everything is still the same." *Spears* Hearing at 1:01:55. Pushed by this Court during the hearing to further explain whether he had any knowledge of whether the regional chaplains may have, in fact, provided sufficient training that was not followed by the Robertson Unit chaplains, Wagner could say only "I can't answer that question." *Spears* Hearing at 1:02:30-1:03:00. And when the Court then asked "You don't actually know what actions [Drum and Pierce] took to train the local unit chaplains?" Wagner responded "No sir." *Spears* Hearing at 1:03:04-1:03:09.

A supervisor may . . . be liable for a failure to train if : "(1) the supervisor either failed to supervise or train a subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Goodman v.*

*Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009)). Even when given the opportunity at the *Spears* hearing, Wagner provided no facts to support his allegations regarding any lack of training by Drum or Pierce of any other subordinate official. As such, Wagner has not alleged a causal connection between any failure to train and the deprivation of a constitutional right. Accordingly, Wagner's claims against Drum and Pierce must be dismissed. *See generally Emmett v. Affey*, No. H-10-3369, 2012 WL 5354617, at * 7 (S.D. Tex. Oct. 26, 2012) (dismissing claims that Warden and TDCJ supervisory officials failed to properly train and supervise religious administrators where Plaintiff failed to state facts to support his allegations regarding inadequate training).

**B.     Limitation Upon Claims for Compensatory Damages under 42 U.S.C. § 1997e(e)**

As a part of his request for relief from this Court, Wagner seeks compensatory monetary damages as "authorized under the Texas Religious Freedom Restoration Act, in the amount of ten thousand dollars, against each defendant in their official capacities." Compl. at 13 (doc. 1). With the enactment of the PLRA, Congress placed a restriction on a prisoner's ability to recover compensatory damages without a showing of physical injury: "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ." 42 U.S.C.A. § 1997e(e) (West Supp. 2017). This physical injury requirement has long been recognized as applying to claims under the Eighth Amendment. *See Herman v. Holiday,* 238 F.3d 660, 665-66 (5th Cir. 2001); *Harper v. Showers,* 174 F.3d 716, 719 (5th Cir. 1999); *Siglar v. Hightower,* 112 F.3d 191, 193-94 (5th Cir. 1997). The United States Court of Appeals for the Fifth Circuit then held that § 1997e(e) applied to claims under the First Amendment as well, noting "it is the nature of the relief sought, and not the underlying substantive violation, that controls: Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury." *Geiger v. Jowers,*

404 F.3d 371, 375 (5th Cir. 2005). More recently, the Fifth Circuit rejected an inmate's claim that § 1997e(e) does not apply to a Fourth Amendment claim arising from a strip search, emphasizing that in *Geiger* the court noted that "1997e(e) applies to *all federal civil actions,*" and noting that "[r]egardless of [Plaintiff's] invocation of the Fourth Amendment, his failure to allege any physical injury preclude his recovery of any compensatory damages for emotional or mental injuries suffered." *Hutchins v. McDaniels,* 512 F.3d 193, 196 (5th Cir. 2007) (emphasis in original). Another district court has applied the language of *Geiger* to hold that an inmate's claims for compensatory damages for violation of the Fourteenth Amendment, without showing physical injury, are barred by § 1997e(e). *See Rogers v. Newman,* No.5:04-CV-193-DCB-JCS, 2006 WL 1520298, at *1 (S.D. Miss. April 7, 2006).

The Court notes first that Wagner has not alleged any physical injury in either his complaint or in his more definite statement. Moreover, even though his claim for damages arises under state law, he has incorporated that claim into this federal lawsuit. As another court in this district has explained, "[b]y its own terms, this limitation [1997e(e)] applies to claims brought in federal court, not merely to claims founded on federal law. It may thus preclude pendent state claims for emotional damages." *Hood v. Balido,* No.3:02-CV-0669-P, 2002 WL 1285200, at * 3 (N.D. Tex. June 4, 2002). Plaintiff's claim under state law for compensatory damages for emotional injury is precluded by 1997e(e) and must be dismissed.

C.      **Claim Under the Rehabilitation Act of 1973, 29 U.S.C. § 794(a).**

Plaintiff asserts a claim in his complaint under the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) (West 2008). Compl. at 6 (doc.1). Confinement in a jail or prison is a program or service for purposes of the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA). *See Wright v. TDCJ, et al.,* No.7:13-CV-116-O, 2013 WL 6578994, at *3 (N.D. Tex. Dec. 16, 2013) (citing *Pa. Dep't of Corrs. V. Yeskey,* 524 U.S. 206 (1998). Discrimination under the ADA and the

RA may include a defendant's failure to make reasonable accommodations to a disabled person. *Wright*, 2013 WL 6578994, at *3 (citing *Melton v. Dart*, 391 F.3d 669, 672 (5th Cir. 2004). Under both the ADA and the RA, a person is disabled if he has "a physical or mental impairment that substantially limits one or more major life activities." *Ball v. LeBlanc*, 792 F.3d 584, 596 and n. 10 (5th Cir. 2015) (citing 42 U.S.C. § 12102(1)(A) (ADA definition) and footnoting that "[t]he RA incorporates the ADA definition of disability by reference. *See* 29 U.S.C. § 705(20)(B). Accordingly, if the prisoners are disabled, they are disabled under both statutes"). But Plaintiff Wagner does not allege that he suffers from any disability, much less any disability that could qualify as any physical or mental impairment that substantially limits one or more major life activities. Thus, Plaintiff's assertion of a claim under the Rehabilitation Act is without merit and must be dismissed.

### D. Claim Under Texas Government Code § 493.006(a)-(b)

In his complaint, Plaintiff also alleges a claim under the Texas Government Code § 493.006 that he contends places an obligation on Texas prison officials to enforce all of the laws of the United States and Texas. Compl. at 7 (doc. 1). But the language Plaintiff recites is no longer in place. *See* Tex. Gov. Code § 493.001 Disposition Table listing no new section for former section 493.006 (West 2012). Thus, any claim under this former provision of the Texas Government Code must be dismissed.

### IV. CONCLUSION and ORDER

It is therefore **ORDERED** that all of Plaintiff's remaining claims against Eric Guerrero, Wallace Nelson, Timothy Hunter, Vance Drum, Bill Pierce, Ronald Fox, and Adam Gonzales are **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915A(b)(1) and alternatively, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

It is further **ORDERED** that all Plaintiff claims for compensatory damages, his claim under the Rehabilitation Act of 1973 (29 U.S.C. § 794(a)), and his claim for relief under Texas Government

Code § 493.006, are **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915A(b)(1) and alternatively, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).[3]

**SO ORDERED.**

SIGNED May 3, 2018.

E. SCOTT FROST
UNITED STATES MAGISTRATE JUDGE

---

[3]The Court will authorize the issuance of process of Wagner's remaining claims against the remaining defendants Archie Scarborough, Keith Meeks, Stanley Baldwin, Richard Burgess, James Finley, Clayton Wheeden, and the Texas Kairos Organization, by separate Order issued this same day.